UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| JEFFREY K. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:26-CV-23-REW-EBA |
| | ) | |
| v. | ) | |
| | ) | OPINION & ORDER |
| CHARLES "CHUCK" HITE, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendant Charles "Chuck" Hite, through counsel, has filed a motion to dismiss Plaintiff Jeffrey K. Johnson's complaint under Rule 12(b)(6). *See* DE 3. Among other things, Hite alleges that Johnson agreed to have the arbitrability of his claims resolved by an arbitrator. *See id.* at 8–10. Ultimately, the Court concludes that Johnson, by agreement, has indeed delegated the issue of arbitrability. As a result, the Court GRANTS DE 3, in part, and STAYS the case pending arbitration.

## I.  BACKGROUND, FROM THE COMPLAINT

In January 2026, Johnson initiated the present action in Kentucky state court. *See generally* DE 1-2. The complaint states that Hite previously worked at Jackson and Coker, a company that connects healthcare organizations with physicians and practitioners. *See id.* ¶ 8, at 2. After leaving Jackson and Coker, he was bound by a non-compete/non-solicitation agreement. *See id.* In potential contravention of that agreement, Hite founded LocumMD, LLC ("LocumMD")—a physician recruiting business—in 2019. *See id.* ¶ 9, at 2. Hite then spent the next two years asking Johnson to work for LocumMD. *See id.* ¶ 10, at 2. After confirming that the new venture complied with the terms of Hite's non-compete/non-solicitation agreement, Johnson signed a sales

consultant agreement and joined LocumMD as an independent contractor on February 2, 2021. *See id.* ¶¶ 11–12, at 2.  Notably, Hite signed the agreement on behalf of LocumMD under the name of his business partner, Jaskamal S. Tucker.  *See id.* ¶ 13, at 3.  Hite also misdated the agreement, indicating that it was signed on "June 4, 2019."  *See id.*

Over the next few years, Johnson generated client leads and assisted in LocumMD's expansion while using his LocumMD company email address.  *See id.* ¶¶ 14–16, at 3.  However, Johnson notes that two particular incidents, both occurring in 2023, stood out to him.  *See id.* ¶¶ 17–24, at 3–4.  First, after Johnson recruited Appalachian Regional Healthcare ("ARH")—a major healthcare system operating in Kentucky and West Virginia—to LocumMD, he discovered that Hite also was recruiting physicians for ARH through a separate platform.  *See id.* ¶ 17, at 3. This caused Johnson concern, as he expected to receive commission on all ARH recruitments.  *See id.*  Second, Johnson learned that Hite headed a new company, LOCUMSourcing, LLC ("LOCUMSourcing").  *See id.* ¶ 19, at 4.  While Hite told Johnson that LOCUMSourcing was an affiliate of LocumMD, Johnson represents that it was instead "a vehicle to circumvent [Hite's] LocumMD partners and divert revenue."  *See id.*

Johnson signed a sales consultant agreement with LOCUMSourcing, the purported affiliate, on July 25, 2023.  *See id.* ¶ 20, at 4.  As before, Hite signed the agreement on behalf of the entity with another individual's name—this time, Charlie H. Pence.  *See id.*  Although a LOCUMSourcing email address was made for Johnson, he was never able to access it on account of alleged technical difficulties.  *See id.* ¶ 21, at 4.  Relevant to the present motion, both the LocumMD agreement and the LOCUMSourcing agreement specify that they are governed by Georgia law and that "any controversy or claim relating to th[e] [a]greement, [and] any performance or dealings between the parties or otherwise shall be settled exclusively by

2

arbitration." *See* DE 8 ¶ 8, at 4; DE 9 ¶ 8, at 4.  Moreover, the agreements both incorporate the American Arbitration Association's Commercial Arbitration Rules ("AAA Rules").  *See* DE 8 ¶ 8, at 4; DE 9 ¶ 8, at 4.

Forward to January 2025.  *See id.* ¶ 25, at 5.  At that point, Johnson claims that he discovered "hundreds of previously unknown emails sent from his LocumMD [email] address, bearing his electronic signature and personal contact information."  *See id.*  Johnson further asserts that some of these emails dated back to 2019—two years before he joined LocumMD.  *See id.*  It is now Johnson's position that Hite used and appropriated his LocumMD and LOCUMSourcing email addresses and identity to circumvent Hite's non-compete/non-solicitation agreement, to avoid paying Johnson commission, and to exploit Johnson's good standing in the healthcare recruitment industry.  *See id.* ¶¶ 22–32, at 4–6.  Based on this conduct, Johnson asserts four causes of action:  (1) identity theft under Kentucky law, *see id.* ¶¶ 33–35, at 6; (2) invasion of privacy by appropriation of name and likeness under Kentucky common law, *see id.* ¶¶ 36–39, at 6–7; (3) defamation and false light under Kentucky common law, *see id.* ¶¶ 40–44, at 7; and (4) fraud and misrepresentation under Kentucky common law, *see id.* ¶¶ 45–49, at 7–8.

One day after Johnson initiated this lawsuit, Hite filed a notice of removal.  *See* DE 1.  Hite (a Georgia citizen) alleges that Johnson (a Kentucky citizen)[1] seeks damages in excess of the amount-in-controversy requirement, thus satisfying the requirements for diversity jurisdiction.  *See id.* ¶¶ 4–8, at 2–3.  Johnson does not dispute the characterizations.  Within a week of removal, Hite

---

[1] The removal papers are wanting because they equate residence to citizenship.  *See, e.g.*, DE 1 ¶ 4, at 2 ("[H]e resides in . . . Kentucky and is, therefore, considered a citizen of . . . Kentucky.").  Citizenship hinges on domicile, not residence.  *See Mason v. Lockwood, Andrews & Newnam, P.C.*, 842 F.3d 383, 391 (6th Cir. 2016) (acknowledging that "the place of residence is *prima facie* the domicile," while also stressing that "allegations of mere residence may not be equated with citizenship" (quoting *Reece v. AES Corp.*, 638 F. App'x 755, 769 (10th Cir. 2016))).  The Court, which must guard jurisdiction irrespective of the parties' views, Orders supplementation on this issue.

filed a motion to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See generally* DE 3.  Specifically, Hite argues that Johnson has failed to satisfy the heightened pleading standard with respect to the fraud and misrepresentation claims contained in Count IV, *see id.* at 4–6, and that Johnson has failed to state defamation and false light claims upon which relief can be granted in Count III, *see id.* at 6–8.  More generally, Hite asserts that all of Johnson's claims must be dismissed because they are subject to mandatory arbitration under the terms of the sales consultant agreements.  *See id.* at 8–10.  Johnson responded in opposition to Hite's motion, *see* DE 10, and Hite replied, *see* DE 11.  The motion is ripe for the Court's review.

## II.    LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(6)

A party may move to dismiss an action for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6); *see also id.* at 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.").  Crucially, when evaluating a Rule 12(b)(6) motion, the Court is required to "accept all the [non-moving party's] factual allegations as true and construe the [pleading] in the light most favorable to the [non-moving party]."  *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005).  The Sixth Circuit has established that a dismissal to compel arbitration falls within Rule 12(b)(6).  *See New Heights Farm I, LLC v. Great Am. Ins. Co.*, 119 F.4th 455, 462–63 (6th Cir. 2024) (finding that dismissal based on mandatory arbitration was "a dismissal on the merits, not for lack of subject-matter jurisdiction," and applying Rule 12(b)(6) as a result).

In order "[t]o survive a motion to dismiss, a [pleading] must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974

(2007)).  If the non-moving party's pleading fails to do so, or if the non-moving party is barred from recovering on its claims as a matter of law, then dismissal is warranted.  *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 127 S. Ct. at 1969).  While the non-moving party's pleading need not include detailed factual allegations, it must include something "more than labels and conclusions."  *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487–88 (6th Cir. 2014) (quoting *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012)).  And although well-pleaded factual allegations should be assumed true, those allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief."  *Bredesen*, 500 F.3d at 527 (quoting *Twombly*, 127 S. Ct. at 1965).[2]

### B.  Arbitrability and the Federal Arbitration Act

While state substantive law governs the formation of arbitration agreements, the Federal Arbitration Act ("FAA") governs the enforceability of arbitration provisions in federal court.[3]  *See Kloosterman v. Metro. Hosp.*, 153 F.4th 501, 509 (6th Cir. 2025) ("[E]ven if Michigan's

---

[2] When assessing a pleading's facial plausibility, the Court may consider exhibits contained in the record "so long as they are referred to in the complaint and are central to the claims contained therein."  *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).  Doing so does not convert a Rule 12(b)(6) motion into a motion for summary judgment.  *See id.* (citing *Bassett*, 528 F.3d at 430).  For that reason, the Court will consider the sales consultant agreements centrally at issue here.

[3] While not in dispute, it is worth identifying the applicable state substantive law.  A federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which it sits.  *See Doe v. Etihad Airways, P.J.S.C.*, 870 F.3d 406, 435 (6th Cir. 2017).  Kentucky courts apply the "any significant contacts" test in tort actions.  *See Saleba v. Schrand*, 300 S.W.3d 177, 181 (Ky. 2009).  Pursuant to that test, "any significant contact with Kentucky [i]s sufficient to allow Kentucky law to be applied."  *Id.* (quoting *Bonnlander v. Leader Nat'l Ins.*, 949 S.W.2d 618, 620 (Ky. Ct. App. 1996)).  Because Johnson was allegedly injured in Kentucky and is himself a Kentucky resident, the "any significant contacts" test is assuredly met.  *Cf. Brewster v. Colgate-Palmolive Co.*, 279 S.W.3d 142, 145 n.8 (Ky. 2009).  As a result, the Court, to this step, applies Kentucky law.  However, the Kentucky courts have long recognized that "choice of law provisions are generally valid in arbitration clauses."  *Hathaway v. Eckerle*, 336 S.W.3d 83, 87 (Ky. 2011) (citing *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. Ct. App. 2001); *Stout v. J.D. Byrider*, 228 F.3d 709 (6th Cir. 2000)).  Therefore, the Court will apply Georgia law in evaluating both the LocumMD and LOCUMSourcing agreements.  *See* DE 8 ¶ 8, at 4; DE 9 ¶ 8, at 4.

'substantive law' of contracts would apply, . . . the Federal Arbitration Act governs the extent to which the party may enforce its arbitration right in federal court . . . .").  The FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Generally, there exists a "strong federal policy in favor of arbitration."  *Huffman v. Hilltop Cos., LLC*, 747 F.3d 391, 394  (6th Cir. 2014).

Relatedly, parties may agree to have the threshold question of arbitrability—that is, whether a dispute is subject to arbitration—determined by an arbitrator rather than a court.  *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("Applying the [FAA], we have held that parties may agree to have an arbitrator decide not only the merits of a particular dispute but also gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."  (internal quotation marks omitted) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010))).  If an arbitration agreement incorporates a delegation clause that empowers "the arbitrator to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement," then courts will typically give effect to that clause so long as it provides clear and unmistakable evidence of the parties' intent to delegate the issue of arbitrability.  *See New Heights Farm*, 119 F.4th at 461 (internal quotation marks omitted).  The Sixth Circuit has determined that a contract's incorporation of the AAA rules is in and of itself clear and unmistakable evidence that the parties agreed to send the issue of arbitrability to arbitration.  *See Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020).

But even in instances where an agreement incorporates the AAA rules, the Court may not give automatic effect to a delegation clause and compel arbitration.  Rather, the Court must conduct a two-step inquiry to confirm the parties' intent.  *See In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 880 (6th Cir. 2021).  First, the Court must "resolve any challenge that pertains to the *formation* or *existence* of the contract containing the delegation provision."  *Id.*  Second, if a contract does exist, the Court must "decide any remaining enforceability or validity challenge . . . if it would 'affect the [delegation provision] alone' or 'the basis of [the] challenge [is] directed specifically to the [delegation provision].'"  *Id.* (quoting *Rent-A-Center*, 130 S. Ct. at 2778).

**III.   ANALYSIS**

### A. Johnson Validly Delegated the Issue of Arbitrability

Hite argues that the sales consultant agreements contain delegation clauses reserving the question of arbitrability to an arbitrator.  *See* DE 3 at 9–10.  Johnson makes four arguments in opposition, asserting that Hite cannot invoke the arbitration provisions because:  (1) Hite did not personally sign either agreement, *see* DE 10 at 20; (2) a portion of Hite's allegedly tortious conduct occurred before Johnson entered into the agreements, *see id.* at 21–22; (3) Johnson's claims do not arise out of the agreements, *see id.* at 18–19; and (4) Hite fraudulently induced Johnson into entering the agreements, *see id.* at 21.  As a preliminary matter, the parties do not dispute that both of the sales consultant agreements incorporate the AAA rules.  *See* DE 8 ¶ 8, at 4; DE 9 ¶ 8, at 4.  Nor do they dispute that incorporation of the AAA rules amounts to clear and unmistakable evidence that the parties intended to reserve the issue of arbitrability for arbitration.  *See Blanton*, 962 F.3d at 846; *see also* AM. ARB. ASS'N, COMMERCIAL ARBITRATION RULES AND MEDIATION PROCEDURES 14 (2026) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration

agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court.").

Before applying the *StockX* framework, the Court addresses three of Johnson's arguments. As to Johnson's first argument, the fact that Hite did not personally sign the sales consultant agreements is not dispositive.  To be sure, the question of whether a non-signatory may invoke a delegation clause presents a "logical conundrum."  *Swiger v. Rosette*, 989 F.3d 501, 507 (6th Cir. 2021) (quoting *De Angelis v. Icon Ent. Grp. Inc.*, 364 F. Supp. 3d 787, 796 (S.D. Ohio 2019)). Under the *StockX* test, the Court is obligated to review issues of contract formation; and if a non-signatory defendant is not a party to the contract, then that defendant has not formed a valid contract with the plaintiff.  *See id.* (citing *De Angelis*, 364 F. Supp. 3d at 796).  However, whether a non-signatory can *enforce* an arbitration agreement is itself a question of arbitrability, here reserved to an arbitrator.  *See id.* (citing *De Angelis*, 364 F. Supp. 3d at 797).

The *Swiger* court ultimately determined that a non-signatory's capacity "to enforce an arbitration agreement concerns a question of arbitrability," and as a result, delegated the question to an arbitrator in accordance with the applicable delegation provision.  *See id.* (citing *Blanton*, 962 F.3d at 848; *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014); *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 715 (5th Cir. 2017); *Apollo Comput., Inc. v. Berg*, 886 F.2d 469, 473–74 (1st Cir. 1989)).  The *Swiger* court's analysis applies with equal force here.  The fact that Hite failed to personally sign the sales consultant agreements is not dispositive on the question of arbitrability.[4]

Similar logic applies to Johnson's second and third arguments.  Johnson is correct that some of the alleged conduct predates the sales consultant agreements, and he is correct that some

---

[4] And interestingly, Johnson alleges that Hite *did* form the contract with him but purportedly signed under a different principal.

of his claims present legal theories arguably independent of those agreements.[5]   But those observations do not resolve the threshold question before the Court.  Rather, they bear on whether Johnson's claims are arbitrable—the very question that Johnson and the documents delegated.  In the Court's view, the same reasoning that prevailed in *Swiger* must prevail with respect to these arguments.  *See id.* (citing *De Angelis*, 364 F. Supp. 3d at 796).  To deny arbitration simply because Johnson's claims, as framed, might not appear arbitrable would revive the "wholly groundless" exception that the U.S. Supreme Court has previously rejected in no uncertain terms.[6]  *See Henry Schein, Inc.*, 139 S. Ct. at 529–31.

The Court now proceeds to step one of the *StockX* framework.  Johnson asserts that he only signed the sales consultant agreements because of Hite's fraudulent inducement.  As a result, no valid contract was formed.  And because issues of contract formation are left to the Court, it may decide upon the arbitrability of Johnson's claims.  *See StockX*, 19 F.4th at 880 (citing *Rent-A-Center*, 130 S. Ct. at 2778).  The critical problem for Johnson's argument, however, is that

---

[5] Although it does not decide these issues here, the Court notes some relevant precedent.  First, the Sixth Circuit has previously determined that broadly written arbitration clauses can be applied retroactively.  *See, e.g.*, *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 652 (6th Cir. 2008) (citing *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 506 (6th Cir. 2007)) ("[T]he language contained in the cover letter, as well as the broad language contained in the arbitration agreement itself, is evidence of the parties' intent to set forth the terms of their ongoing relationship in writing, a type of umbrella agreement governing the parties [sic] overall relationship, and that the arbitration agreement applied retroactively.").  Second, when the Sixth Circuit *does* determine that a particular claim is not covered by an arbitration clause, the court tends to do so on account of the narrowness of that specific clause.  *See, e.g.*, *United States ex rel. Paige v. Bae Sys. Tech. Sols. & Servs., Inc.*, 566 F. App'x 500, 504 (6th Cir. 2014) ("The arbitration provision . . . is narrower than those in cases addressing broadly-worded arbitration clauses because it explicitly limits the scope of the clause to the disputes arising 'under the terms of this agreement' and does not include claims 'related' to the agreement or that arise out of the relationship between the parties.").  Upon an initial assessment, the arbitration clauses at issue here appear to be exceedingly broad.  *See* DE 8 ¶ 8, at 4 (stating that "any controversy or claim relating to this [a]greement, [and] any performance or dealings between the parties or otherwise shall be settled exclusively by arbitration"); DE 9 ¶ 8, at 4 (same).
[6] The Court further notes Johnson's allegation of improper contract dating by Hite.  With respect to the LocumMD sales consulting agreement, the signature block reflects a February 2021 execution.  *See* DE 8 at 4.  However, the introductory paragraph references a June 2019 entry.  *See id.* at 1.  Johnson did enter the contract.  What those discrepancies mean is, as a merits matter, to be determined.

9

fraudulent inducement does not go to a contract's formation or existence.  Under Georgia law, it goes to a contract's enforceability or validity.  *See Novare Grp., Inc. v. Sarif*, 718 S.E.2d 304, 307 (Ga. 2011) (citing *Ekeledo v. Amporful*, 642 S.E.2d 20, 22 (Ga. 2007); *Williams v. Fouche*, 121 S.E. 217, 217 (Ga. 1924)) (treating a contract based on fraudulent inducement as voidable rather than void); GA. CODE ANN. § 13-5-5 ("Fraud renders contracts voidable at the election of the injured party.").  Thus, while Johnson can theoretically assert fraudulent inducement as a defense to enforcement of the contract, he must do so at step two of the *StockX* framework.

But any challenge at step two of the *StockX* framework must also fail.  The Sixth Circuit has clearly stated that such challenges must target a delegation clause with particularity.  *See StockX*, 19 F.4th at 880 (citing *Rent-A-Center*, 130 S. Ct. at 2778); *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 355 (6th Cir. 2022) ("The Supreme Court in *Rent-A-Center* explained that a respondent does not challenge the delegation provision while attacking the enforceability of the arbitration agreement as a whole unless the attack is specific to language in the delegation provision.").  Johnson does not make a challenge specific to the delegation provision in either contract.  Rather, he alleges that the sales consultant agreements, taken as a whole, are voidable based on fraudulent inducement.  Although Johnson undoubtedly has a right to make that argument, he must make it to an arbitrator—not this Court.

### B.  The Case Is Stayed Pending Arbitration

Despite Hite's position, the Court will not dismiss this case.  When a court determines that a claim is subject to arbitration under the FAA, it is required to stay the proceedings upon request.  *See Kloosterman*, 153 F.4th at 507 (citing *Smith v. Spizzirri*, 144 S. Ct. 1173, 1176–78 (2024)) ("Indeed, the Supreme Court has held that § 3's use of the verb 'shall' means that courts must stay a case—and lack the power to dismiss it—if a party requests that stay relief.").  Although Hite

looks to assert in his reply that "no party has asked for a stay," *see* DE 11 at 3 n.1, the Court is confident that Johnson's statement at the end of his response functions as a clear and unambiguous request for a stay, *see* DE 10 at 22.  As a result, the Court stays the case pending arbitration.

The Court does take care to emphasize the limited nature of its holding.  The decision today "addresses only *who* resolves [Johnson]'s challenges."  *Swiger*, 989 F.3d at 507.  Johnson may still raise all of his defenses against enforcement of the relevant arbitration provisions, and should an arbitrator decide that some or all of Johnson's claims against Hite are not covered by those provisions, the Court will maintain jurisdiction.[7]

**IV.    CONCLUSION**

Accordingly, the Court GRANTS DE 3, in part, and STAYS the case pending arbitration. Within five (5) days, Hite must amend the jurisdictional statements in the removal notice, via 28 U.S.C. § 1653, to properly allege citizenship of the parties.

This the 13th day of July, 2026.

Signed By:

*Robert E. Wier*

**United States District Judge**

---

[7] The Court declines to rule on the remaining arguments that Hite raises in his motion, as doing so would exceed the scope of its present authority.  If an arbitrator determines that Johnson's claims are not subject to arbitration, then the Court will consider Hite's remaining merits-centered arguments if and when renewed.